Affirmed and Majority, Concurring, and Dissenting Opinions filed
September 26, 2002
















Affirmed and
Majority, Concurring, and Dissenting Opinions filed September 26, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00403-CV

____________

 

TASSO TRIANTAPHYLLIS, Appellant

 

V.

 

BRENT GAMBLE, Appellee

 

 

 

On Appeal from
the 234th District Court 

Harris County, Texas

Trial Court
Cause No. 02-08865

 

 

 

M A J O R I
T Y  O P I N I O N

            In this appeal, appellant, Tasso Triantaphyllis, the
Democratic candidate for Judge of the 270th District Court of Harris County,
seeks a reversal of the trial court’s final judgment and order granting a
permanent injunction.  The permanent
injunction directed Harris County Republican Party officials to extend the
filing deadline to accept the corrected application of appellee,
Brent Gamble, for the Republican primary election as a candidate for Judge of
the 270th District Court, and to confirm that Gamble is the Republican Party
nominee for Judge of the 270th District Court on the November general election
ballot.  We affirm.

 

Background

            The relevant background facts in
this case may be found in this Court’s opinion conditionally granting mandamus
relief to Triantaphyllis.  In re Triantaphyllis, 68 S.W.3d 861 (Tex. App.—Houston [14th
Dist.] 2002, orig. proceeding).  In that
original proceeding, this court ordered that Gamble’s name be removed from the
Republican Party general primary ballot as a candidate for the office of Judge
of the 270th District Court because his application was defective.  Id. at
869-70.  The party officials complied
with our directive and removed Gamble’s name. 


            Gamble then filed a petition for
writ of mandamus in the Texas Supreme Court. 
Although the majority opinion disagreed with this court’s construction
of the Election Code, the Texas Supreme Court denied mandamus relief.  In re
Gamble, 71 S.W.3d 313 (Tex.
2002).  The Texas Supreme Court found
that equitable remedies may be available under limited circumstances to permit
a candidate to amend a defective application after a statutory deadline has
expired when an election official has violated a statutory duty.  Id. at
318.  The determination of a party’s
entitlement to equitable relief must “be decided after a hearing on the merits
where interested parties have an opportunity to be heard.”  Id.  A plurality of the court opined that
injunctive relief in this case would be appropriate if the facts Gamble
alleged, that the defect in his application was merely a clerical error that
party officials should have noticed and called to his attention, were true.  Id.  The court then explained that Triantaphyllis had a right to contest those facts at a
hearing.  Id.  

            Accordingly, on February 20, 2002, Gamble
filed a new lawsuit and requested an immediate temporary injunction hearing and
an expedited hearing on his request for a permanent injunction.  See
Tex. Elec. Code Ann. § 273.081
(“A person who is being harmed or is in danger of being harmed by a violation
of threatened violation of this code is entitled to appropriate injunctive
relief to prevent the violation from continuing or occurring.”)  An evidentiary hearing was held on February 26, 2002.  At the conclusion of the hearing, the trial
court granted the temporary injunction and set the case for trial on April 15, 2002.  Triantaphyllis
filed his notice of appeal on March 1,
 2002, and the interlocutory appeal was assigned to this Court on March 5, 2002.  Triantaphyllis also
sought a stay and expedited consideration. 
The Court denied the stay but granted expedited consideration, hearing
oral argument on March 26,
 2002.  See Triantaphyllis v. Gamble, No.
14-02-00190-CV, 2002 WL 1042076 (Tex. App.—Houston [14th
Dist.] May 23, 2002, pet.
filed) (not designated for publication). 


            On April 15, 2002, the trial court held a hearing on
Gamble’s permanent injunction request. 
The parties entered into a Rule 11 agreement stipulating that the
permanent injunction request would be tried on the basis of the record that was
adduced at the temporary injunction hearing.[1]  Based upon this record and additional
argument of counsel, the trial court granted a permanent injunction allowing
Gamble’s name to be placed on the general election ballot.  The trial court filed findings of fact and
conclusions of law in support of the injunction.  Triantaphyllis then
appealed from the permanent injunction. 
He requested, and this Court agreed, that the record from the temporary
injunction appeal would be transferred to the appeal of the permanent
injunction.  This Court then dismissed
the appeal from the temporary injunction as moot.  Triantaphyllis v.
Gamble, 2002 WL 1042076.

Standard of
Review in an Appeal of a Permanent Injunction

            Permanent injunctive relief is
appropriate upon a showing of (1) the existence of a wrongful act, (2) the
existence of imminent harm, (3) the existence of irreparable injury, and (4)
the absence of an adequate remedy at law. 
Jim Rutherford Invs.,
Inc. v. Terramar Beach Cmty. Ass’n, 25 S.W.3d
845, 849 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied).  In addition,
a court determining the appropriateness of a permanent injunction should
balance the competing equities, including the public interest.  See In
re Gamble, 71 S.W.3d at 317 (citing
Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615,
618-19 (1950)); see also Hitt v. Mabry, 687 S.W.2d 791, 795 (Tex. App.—San
Antonio 1985, no writ); Davies v.
Unauthorized Practice Committee of State Bar, 431 S.W.2d 590, 595 (Tex. Civ. App.—Tyler 1968, writ ref’d n.r.e.). 

            In an appeal from a permanent
injunction, the standard of review is clear abuse of discretion.  Tyra v. City of Houston, 822
S.W.2d 626, 631 (Tex. 1991); Harris County Emergency Serv. Dist. No. 1. v. Harris County Emergency Corps, 999 S.W.2d 163, 167 (Tex. App.—Houston [14th Dist.]
1999, no pet.).  A trial court abuses its
discretion by (1) acting arbitrarily and unreasonably, without reference to
guiding rules or principles, or (2) misapplying the law to the established
facts of the case.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985).  The trial court does not abuse
its discretion when its decision is based on conflicting evidence and some
evidence in the record reasonably supports the trial court’s decision.  Davis
v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); SRS Products Co., Inc. v. LG Engineering Co., Ltd., 994 S.W.2d 380,
383 (Tex. App.—Houston [14th Dist.] 1999, no pet.). 

            In addition, the trial court’s
findings of fact are reviewed under the same legal and factual sufficiency
standards as jury findings.  Anderson v. City of Seven Parks, 806
S.W.2d 791, 794 (Tex.
1991).  In a legal sufficiency challenge,
the court considers only the evidence and inferences, when viewed in their most
favorable light, that tend to support the finding under attack, and disregards
all evidence and inferences to the contrary. 
Davis v. City of San Antonio,
752 S.W.2d 518, 522 (Tex.1988); Anderson,
Greenwood & Co. v. Martin, 44 S.W.3d 200, 217 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied).  If there is
any evidence of probative force to support the finding, the point must be overruled
and the finding upheld.  Sherman v. First Nat’l Bank, 760 S.W.2d
240, 242 (Tex. 1988); In re King’s Estate,
150 Tex. 662, 244 S.W.2d 660, 661 (1951).




Did party officials review Gamble’s application “as soon as
practicable” in compliance with Texas Election Code
Section 141.032?

            In his first issue, Triantaphyllis argues there is no evidence to support the
trial court’s finding that the Republican Party failed to discharge its
statutory duty to review Judge Gamble’s application “as soon as practicable,”
as required by Texas Election Code Section 141.032(c).  The Code provides that the county chair “shall review the application to
determine whether it complies with the requirements as to form, content, and
procedure that it must satisfy for
the candidate’s name to be placed on the ballot.”  Tex.
Elec. Code Ann. § 141.032(a) (emphasis added).  Section 141.032(c), applicable here, provides
in relevant part that “[i]f an application is
accompanied by a petition, the petition is considered part of the application,
and the review shall be completed as soon as practicable after the date the
application is received by the authority.” 
Tex. Elec. Code Ann. §
141.032(c).  

            These provisions are designed to
provide candidates with the assistance of party officials in complying with the
myriad and technical requirements for becoming a party candidate.  In re
Gamble, 71 S.W.3d at 318 (“[Section 141.032] serves as a safety net for
candidates who file their applications early in the filing period, assuring
that individuals willing to commit to public service will receive the
assistance of party officials in complying with the myriad and technical
requirements for becoming a party candidate. 
There would be no purpose to the duty to notify the prospective
candidate of defects in his or her application if the intent was not to allow
an opportunity to cure those defects, particularly if the defects can be
corrected before the filing deadline.”). 
Thus, as the Texas Supreme Court recognized, “a party official’s failure
to follow the application review and notice requirements of section 141.032 in
a timely manner is . . . significant and is a consideration for a court called
upon to hear a candidate’s claim for equitable relief.”  Id.  

            In Harris County, the
Republican Party primary director, rather than the party chair, was put in
charge of reviewing applications.  The
stipulated testimony of the primary director, Kathy Haigler,
was that she “assumed” that Gamble had correctly listed the office for which
she knew he intended to run – Judge of the 270th District Court – and she did
not review the application carefully for content.  Haigler stated in
her affidavit in relevant part as follows:

3.         Before December 19, 2001, I knew that Brent Gamble
was Judge of the 270th Judicial District Court of Harris County, Texas, and was seeking reelection
to that office.  Further, before the January 2, 2002 application deadline, I read Judge Gamble’s
petition, which stated that he is running for the office of 270th Judicial
District Court Judge.  

4.         On December 19, 2001, I was presented with Judge
Gamble’s application to run in the March 12,
 2002
Republican primary election for the office of District Judge.  Since I knew that Judge Gamble was seeking
reelection for the office of 270th Judicial District Court I assumed the
petition was correct, and at that time, I did not review it carefully for
content.  Neither I nor anyone else
associated with the Harris County Republican Party reviewed the application for
content and discovered the mistake before January 3,
 2002.  

5.         On January 3, 2002, I was informed that Judge
Gamble’s application contained a clerical error.  I then carefully reviewed Judge Gamble’s
application and noticed, for the first time, that he had misidentified the
position he sought.  Rather than
identifying the court as the 270th Judicial District Court, he identified it as
the 190th District Court.  Since I knew
that Judge Gamble was seeking reelection to the 270th Judicial District Court,
I immediately knew that it was a clerical mistake, and notified him of the
error.  At that time, I informed Judge
Gamble that his name would be removed from the list of Republican candidates
seeking the office of District Judge, 270th Judicial District Court in the March 12, 2002 Republican primary election unless the mistake was
remedied.

6.         Had I inspected the application carefully when I received it
on December 19, 2001 or before the January 2, 2002 filing deadline, I would have noticed the mistake
and promptly notified Judge Gamble of the error.

 

            Triantaphyllis
relies on Haigler’s affidavit to substantiate his
contention that no evidence supports the trial court’s finding that party
officials failed to properly review Gamble’s application “as soon as
practicable.”  Triantaphyllis
asserts the affidavit contains no evidence as to what was “practicable” at the
time or that the application was not reviewed before January 2, 2002.  He focuses on Haigler’s
statement that she “read” Gamble’s petition (not his application).  He fails to acknowledge, however, her
statement that neither she nor anyone else with the party reviewed the
application for content before the mistake was discovered on January 3, 2002.  In addition, Gamble testified that when he
filed his application four years earlier, party officials immediately conducted
a review in his presence. Further, Haigler reviewed
the application as soon as she was informed of the error on January 3.  This testimony supports an inference that it
was practicable to review the application promptly, certainly within the
two-week period between Gamble’s filing and the deadline, but party officials
did not do so.

            Triantaphyllis
recognizes that “[o]nly when the application and
petition are compared is the discrepancy between the two revealed.”  According to Section 141.032(c), the petition
is part of the application and the party’s duty to review applies to both
documents.  Haigler
testified she read the petition,
which contained the correct court designation, before the filing deadline.  Her affidavit provides evidence that the
party failed to compare the petition and application until January 3.  She acknowledged that had she done so
promptly, she would have noticed the error.

            Gamble filed his application two
weeks before the filing deadline.  The
party’s failure to review the application and discover the error until after
the filing deadline cannot be said to be “as soon as practicable” under these
facts.  Even a cursory review of both the
petition and application would have revealed that Gamble’s application did not
comply with the necessary requirements. 
When the error was discovered on January 3, 2002, after the filing deadline, Haigler “immediately” knew it was a clerical mistake and
informed Gamble his name would be removed from the ballot.  

            We hold there is more than a
scintilla of evidence to support the trial court’s finding that the Harris
County Republican Party officials failed to properly review Gamble’s
application “as soon as practicable.”  Triantaphyllis’s first issue is overruled.




Balancing the Equities

            In his second issue, Triantaphyllis asserts that a balancing of the equities
does not support the court’s order that Gamble’s name be placed on the
ballot.  “[T]he legislature [in section
273.081] has specifically called upon the courts to exercise their equitable
powers to resolve election code violations. 
And when exercising such jurisdiction, a court must, among other things,
balance competing equities.”  In re Gamble, 71 S.W.2d at 317.

            Triantaphyllis
complains that the trial court clearly abused its discretion in allowing a
“questionable and minor” statutory violation by party officials to outweigh
Gamble’s “egregious” violation of the statute. 
To support his position, he points to evidence that Gamble was
inattentive to his responsibility to see that his application was correct.  He hired Heidi Lange as his political
consultant and looked to her to prepare the application.  The application listed the wrong court in two
places above his signature, yet he did not notice the errors.  He was not present when Lange completed the
application, and he did not review it thoroughly or keep a copy of it.  He did not know what was required by the
Election Code.  Triantaphyllis
acknowledges that Gamble has been forthright and candid in admitting his
mistake and accepting responsibility for it, but he argues that Gamble’s candor
does not shift the equities in his favor. 


            Triantaphyllis
argues that Republican party officials may not be held responsible for Gamble’s
negligence.  He argues that the party
officials’ failure, if any, to review the application as soon as practicable,
is clearly outweighed by Gamble’s negligent conduct.  He also asserts that Gamble has the right to
run as a write-in candidate in the general election, so he would not have been
irreparably harmed by the omission of his name from the ballot.

            Gamble responds that the harm to him is irreparable, as is more fully
discussed below, and the injunction caused no harm to the Harris County
Republican Party.  Although Triantaphyllis emphasized Gamble’s culpability in filing a
defective application, he pointed to no evidence that the mistake on the
application was anything more than a mere clerical error that Gamble
inadvertently did not notice.  The Texas
Supreme Court specifically held that Gamble’s own fault does not bar him from
obtaining equitable relief.  In re Gamble, 71 S.W.2d at 318.  The opinion pointedly recognized the
appropriateness of injunctive relief on these facts:

In this case, Judge Gamble
contends that the only defect in the application is a clerical one, appearing
on its face that party officials should have noticed and called to his
attention well before the filing deadline expired.  Such
facts, if true, state a claim for equitable relief.

In re Gamble, 71 S.W.2d at 318 (emphasis added).

            Gamble further argues that the only
party “harmed” by the injunction is Triantaphyllis,
but Triantaphyllis presented no evidence as to his
harm.  He has not explained how equity
favors allowing a candidate to win an election by default due to a clerical
error.

            Moreover, any interest that Triantaphyllis may have in receiving the windfall of an
unopposed general election is far outweighed by the voters’ interest in
electing the candidate of their choice.  Texas courts
traditionally have elevated the rights of voters over those of  individual candidates.  See
Bryant v. O’Donnell, 359 S.W.2d 281, 286 (Tex. Civ.
App.—Dallas 1962, no writ) (recognizing that the Texas Constitution provides in
article 1, section 2 that “[a]ll political power is
inherent in the people, and all free governments are founded on their
authority, and instituted for their benefit.”). 
The right to vote for a candidate of one’s choice has been described as
“the essence of a democratic society.”  Reynolds v. Sims, 377 U.S. 533, 555
(1964).  Without injunctive relief,
voters would be deprived of any choice between Republican and Democratic
candidates for judge of the 270th District Court in the general election.  Thus, the public interest – which is
paramount – strongly supports the trial court’s decision to issue the permanent
injunction.  

            In conclusion, we hold the trial
court did not abuse its discretion in balancing the equities in favor of
granting injunctive relief to place Gamble’s name as the Republican party
nominee on the general election ballot. 
We overrule Triantaphyllis’s second issue.

 

Has the appeal been rendered moot?

            In his third issue, Triantaphyllis asserts that because voting had begun before
the injunctive relief was granted, the case is moot.  Appellate courts are prohibited from deciding
moot controversies.  Nat’l Collegiate Athletic Ass’n v. Jones,
1 S.W.3d 83, 86 (Tex. 1999)
(noting that prohibition against deciding moot controversies is rooted in the
constitutional separation of powers principles).  

            Here, the temporary injunction was
not issued until after ballots had been printed, ballots had been mailed to
those voting by mail, and early voting by personal appearance had begun.  Triantaphyllis
argues that the permanent injunction was granted to make permanent the
temporary injunction improperly issued after the election had started.  He asserts, therefore, that the case should
have been dismissed as moot.  

            Triantaphyllis
relies on a line of cases holding that an election contest becomes moot and the
issue no longer justiciable once the election process
begins.  See, e.g., Lerma v. Ramon, 760 S.W.2d
727, 730 (Tex. App.—Corpus Christi 1988, no writ).  Generally, a contest as to the candidacy of
an applicant must be dismissed as moot where the contest cannot be tried and a
final decree issued in time for it to be complied with by election
officials.  See, e.g., Salazar v. Gonzales 931 S.W.2d 59, 60 (Tex. App.—Corpus
Christi 1996, no writ) (dismissing accelerated appeal of election contest as
moot after early voting for general
election began); Law v. Johnson, 826
S.W.2d 794, 797 (Tex. App.—Houston [14th Dist.] 1992, no writ) (holding appeal
of denial of injunction to keep opponent off ballot was rendered moot after
absentee voting began).  This general
rule of the law does not require dismissal in this case, however.

            The cases Triantaphyllis
cites are distinguishable from the situation at issue here; they concern
challenges to ballots for contested races. 
See, e.g., Skelton v. Yates,
119 S.W.2d 91 (Tex. 1938) (involving contest of election results between two
Democratic candidates for same position); Salazar
v. Gonzalez, 931 S.W.2d 59 (Tex.
App.—Corpus Christi 1996, no writ)
(addressing election contest between two candidates for same county
commissioner position); Smith v. Crawford,
747 S.W.2d 938, 940 (Tex. App.—Dallas 1980, no writ) (applying mootness doctrine where a contest between candidates for
nomination in a party primary election could not be tried and a final decree
entered in time for compliance with pre-election statutes).  In those cases, equitable relief would have
interrupted the electoral process.  Here,
both Gamble and Triantaphyllis ran unopposed in their
respective primaries.  There is ample
time for election officials to prepare the ballots to comply with the final
decree before the November general election, causing no disruption to the
electoral process. 

            The Texas Supreme Court provided
relief in a situation similar to that with which we are faced in Correa v. First Court of Appeals, 795
S.W.2d 704 (Tex. 1990). 
In Correa, the court of
appeals had ordered the candidate’s application be rejected, but the Texas
Supreme Court stayed the court of appeals’ writ so that his name could be
placed on the Democratic primary ballot after absentee voting by personal
appearance had already begun.  Id. at 705; cf. Fitch v. Fourteenth Court of Appeals, 834 S.W.2d 335 (Tex.
1992) (determining sufficiency of candidate’s application after entire primary
election had already occurred, after granting stay of court of appeals’
decision so unopposed primary candidate could be placed on ballot pending final
decision).  Thus, the beginning of early
voting does not deprive a court of the power to determine whether a candidate’s
name should be on the ballot.

            The Texas Supreme Court has
explained that the only limitation on the trial court’s authority to grant
injunctive relief is the election schedule itself.  In re
Gamble, 71 S.W.3d 318 & n.17 (citing Blum v. Lanier, 997 S.W.2d 259, 263 (Tex. 1999)
(injunction that delays election is improper)). 
The court explained “if the matter is one that can be judicially
resolved in time to correct deficiencies in the ballot without delaying the election, then injunctive relief may provide a
remedy . . . .”  Blum, 997 S.W.2d at 263-64 (emphasis added). 

            The permanent injunction issued on April 15, 2002, does not
interfere with the general election in November.  The evidence in the record also demonstrates
that the temporary injunction did not delay or interrupt the Republican primary
election.  Because the Republican Party
already planned to use additional paper optical scan ballots on election day
and these paper ballots had not yet been printed, Gamble’s name was added to
the optical scan ballots at no additional cost. 


            Triantaphyllis
also asserts this case is barred by section 141.034 of the Election Code, which
provides that “[a]n application for a place on the ballot may not be challenged
for compliance with the applicable requirements as to form, content, and
procedure after the day before the beginning of early voting by personal
appearance for the election for which the application is made.”  Tex.
Elec. Code Ann. § 141.034(a).  Triantaphyllis makes no argument to support this
contention.  Moreover, Gamble asserts the
statute is inapplicable here because he is not challenging an application for a
place on the ballot.  Even if he were,
his lawsuit was filed before early voting by personal appearance began.  

            For the reasons discussed above, the
issues here were not moot at the time the injunctive relief was granted, and
they are not moot now.  We overrule Triantaphyllis’s third issue.

Was there any evidence of irreparable harm?

            In his fourth issue, Triantaphyllis asserts there is no evidence that Gamble
would suffer irreparable harm if his name were not on the ballot.  He argues Gamble has the right to run as a
write-in candidate. 

            “An irreparable injury is an injury
that cannot be adequately compensated for or for which compensation cannot be
measured by any certain pecuniary standard.” 
Parkem Indus. Servs.,
Inc. v. Garton, 619 S.W.2d 428, 430 (Tex.
App.—Corpus Christi 1981, no writ). 
Gamble argues that without permanent injunctive relief, his name would
not be listed as the Republican nominee for judge of the 270th District Court
in the November general election.  He
vigorously asserts that the harm would be irreparable.

            Even though write-in voting is
permitted in the general election, a write-in candidacy is not equivalent to
being the Republican party nominee.  Triantaphyllis cites to no evidence that the ability to
receive write-in votes could ever be the equivalent of being the Republican
Party nominee.  To the contrary, Judge
Gamble testified that the practical effect of having no Republican nominee on
the general election ballot would be that Triantaphyllis
would be elected judge of the 270th District Court.  This testimony was not rebutted.

            Accordingly, there is some evidence
to support the trial court’s finding. 
The trial court did not abuse its discretion in finding irreparable
harm.  We overrule Triantaphyllis’s
fourth issue on appeal.

Did the trial court err in denying Triantaphyllis’s
motion to abate?

            Finally, Triantaphyllis
alleges the trial court erred in denying his motion to abate.  At the temporary injunction hearing, he asked
the trial court to abate the case until this Court withdrew or modified its
conditional order in the earlier original proceeding.  He alleges that the temporary injunction
conflicts with our January
 31, 2001, order.  He
also asserts that a necessary party, the primary committee of the Harris County
Republican Party, should have been be added to the suit. 

            Triantaphyllis
did not move to abate the permanent injunction hearing, nor did he reurge his earlier motion at that hearing.  Therefore, by failing to make his complaint
known to the trial court and securing a ruling, Triantaphyllis
has not preserved error for our review in this appeal.  Tex.
R. App. P. 33.1(a).  However,
because this Court dismissed the interlocutory appeal as moot without
addressing Triantaphyllis’s argument on the motion to
abate, in the interest of justice, we will address his contentions.

            This Court previously rejected Triantaphyllis’s arguments when we denied his requests for
issuance of the writ of mandamus that had been conditionally granted and for a
stay of the injunction pending his interlocutory appeal.  We disagree with Triantaphyllis’s
contention that the temporary injunction and this Court’s order in the mandamus
cannot be reconciled.  These two orders
are based on different factual records in different trial court
proceedings.  The Texas Supreme Court
held that injunctive relief was available. 
In re Gamble, 71 S.W.2d at
318.  Gamble was not required to ask
leave of this Court or to have our earlier order dissolved or modified before
seeking that relief.  

 class=Section2>

            Finally, we reject Triantaphyllis’s contention that the Harris County
Republican Party primary committee is a necessary party to the suit.  The Election Code states that the Harris
County Republican Party chair is the authority responsible for having the
official ballot prepared.  Tex. Elec. Code Ann. § 52.002.  The county chair is also the authority
responsible for placing candidates’ names on the ballot.  Id. §
52.003.  As numerous election cases
illustrate, the primary committee is not a necessary party in this type of
dispute.  See, e.g., In re Bell, 2002 WL 87074 (Tex. Jan. 22, 2002) (orig.
proceeding) (county party chair and primary director); Davis v. Taylor, 930 S.W.2d 581 (Tex. 1996) (orig. proceeding)
(county party chair and secretary of state); Sears v. Bayoud, 786 S.W.2d 248 (Tex.
1990) (orig. proceeding) (state party chair); Wallace v. Howell, 707 S.W.2d 876 (Tex. 1986) (orig. proceeding)
(state party chair).

            We hold the trial court properly
denied the motion to abate and overrule Triantaphyllis’s
fifth issue on appeal.  

Conclusion

            Triantaphyllis
has not established that the trial court abused its discretion in granting the
permanent injunction order allowing Gamble’s name to be placed on the general
election ballot as the Republican candidate for judge of the 270th District
Court.  Accordingly, the trial court’s
final judgment and permanent injunction are affirmed.  

 

                                                                                    

                                                                        /s/        Wanda McKee Fowler

                                                                                    Justice

 

Judgment rendered and Majority, Concurring, and
Dissenting Opinions filed September

26, 2002.

 

Panel consists of Justices Fowler, Edelman, and
Seymore. (Seymore, J. concurring; Edelman, J. dissenting.)

 

Publish — Tex. R. App. P. 47.3(b).




 








Affirmed and Majority, Concurring, and Dissenting Opinions filed September 26, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-00403-CV

_______________

 

TASSO
TRIANTAPHYLLIS, Appellant

 

V.

 

BRENT GAMBLE, Appellee

                                                                                                                                                

On Appeal from
the 234th District Court

Harris County, Texas

Trial Court
Cause No. 02-08865

                                                 
                                                                                              

 

C O N C U R R I N G   O P I N I O
N

 

            I join and fully concur with the
court’s analysis and opinion but write separately for emphasis.  I reluctantly joined the majority when we
granted appellant’s first petition for writ of mandamus and issued an order
directing the Harris County Republican Party to remove appellee’s
name from the 2002 primary ballot. 
Absent any claim of fraud or misfeasance, it was my considered opinion
that placing appellee’s name on the primary ballot
was a “just and reasonable result.”  See In re Bell, 45 Tex. Sup. Ct.
J. 336, 2002 WL 87074 (Jan. 22,
 2002).  At that time, I did not believe our court
had sufficient guidance from the supreme court relative to application of the
Code Construction Act under these facts. 
Consequently, I did not write a dissenting opinion.  The supreme court has spoken.  Mistakes on applications should not result in
an absolute bar to equitable relief.  In re Gamble, 71 S.W.3d 313, 318 (Tex.
2002).  A court, among other things, must
balance competing equities when exercising equitable powers to resolve election
disputes.  Id. at 317. 
Appellant has never answered the question posited by the court: when
balancing competing equities should a court allow a candidate who files an
application to be placed on the ballot in the Democrat party primary, to win a
general election by default merely because the Republican party accepted a
corrected application (one day after the filing deadline) from the only
candidate for that position in the Republican party primary?  I respectfully suggest that in deciding
whether equitable remedies should be available under these unique facts, the
dissenting supreme court justices in Gamble
failed to distinguish between the instant scenario, where the applicant for a
place on the primary ballot has no opponent in the party primary and the
countervailing situation where two contestants are seeking nomination from the
same political party.  

            Judge Gamble is entitled to the
statutory protection afforded candidates who file their applications early
because party officials had opportunity but failed to review his application
and provide notice of any reason for rejection. 
This interpretation has been applied in other cases.  See
Escobar v. Sutherland, 917 S.W.2d 399, 406 (Tex. App.—El Paso 1996, orig.
proceeding); See also, In re Ducato, Steen & Cloud, 66 S.W.3d. 558 (Tex. App.—Fort
 Worth, 2002 n.w.h.). 

            The dissent contends we should
vacate the trial court’s judgment and order this case dismissed.  My colleague erroneously opines that Judge
Gamble’s only authorized action for injunctive relief under Tex. Elec. Code Ann. § 273.081 (Vernon 1986)
would be to compel timely review of his application.  He asserts that injunctive relief is
available only to prevent or stop a violation which had “occurred and was
completed well before” Judge Gamble had an opportunity to seek an
injunction.  The dissent has misstated
Judge Gamble’s reason for seeking injunctive relief.  The conduct that precipitated this action for
injunctive relief was not “the official’s failure to review the application as
soon as practicable.”  Succinctly, the
Election Code violation occurred and continued to occur each time Harris County
Republican Party officials refused to place Judge Gamble’s name on the
ballot.  Accordingly, Judge Gamble had
standing to seek the relief granted by the trial court and the trial court had
jurisdiction to fashion an equitable remedy.

            I join the court in affirming the
trial court’s final judgment and permanent injunction. 

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment rendered and Majority, Concurring, and
Dissenting Opinions filed September 26, 2002.

 

Panel consists of Justices Fowler, Edelman, and
Seymore.  

 

Publish — Tex. R. App. P. 47.3(b).

 

 

 




 








Affirmed and
Majority, Concurring, and Dissenting Opinions filed September 26, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO.
14-02-00403-CV

_______________

 

TASSO TRIANTAPHYLLIS,
Appellant

 

V.

 

BRENT GAMBLE, Appellee

                                                                                                                                               


On Appeal from
the 234th District Court

Harris County, Texas

Trial Court
Cause No. 02-08865

                                                                                                                                               


 

D I S S E N T I N G   O P I
N I O N

 

            When construing a statute, we
ascertain the Legislature’s intent from the plain meaning of the actual
language used.  Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex.
2002).  When the Legislature employs a
term in one part of a statute and excludes it in another, we presume  the Legislature had a reason for doing
so.  Fireman’s
Fund County Mut. Ins. Co. v. Hidi, 13 S.W.3d
767, 769 (Tex.
2000).  We do not invent a remedy the
Legislature could have, but did not, specify. 
State v. Roland, 973 S.W.2d
665, 666 (Tex.
1998).  Thus, it is not our function to
revise the Legislature’s policy choices, even where a party is unfairly
deprived of a remedy.  Fireman’s Fund, 13 S.W.3d at 769.

            The scope of relief available under
section 273.081 is specific and unambiguous: “A person who is being harmed or is in danger of being harmed
by a violation or threatened violation of this code is entitled to appropriate
injunctive relief to prevent the
violation from continuing or occurring.” 
Tex. Elec. Code Ann. §
273.081 (Vernon 1986)
(emphases added).  Section 273.081 thus
applies to stop current violations and prevent future violations, but not to
retract or reverse past violations which have ceased,[2] or to
prevent harm from past violations from occurring or continuing.[3]  See id.  Moreover, a complainant lacks standing to
assert, and a trial court lacks jurisdiction to entertain, an injunction
proceeding where no present or future violation is alleged.[4]

            In this case, the only violation of
the Election Code alleged or proved was the untimeliness
of the party election official’s review of Judge Gamble’s primary ballot
application, i.e., the official’s
failure to review it as soon as practicable. 
This violation occurred and was completed well before Judge Gamble
learned of it or had any opportunity to seek an injunction to prevent it from
occurring or continuing.  All of the
party official’s actions after discovering the discrepancy between the
application and attached petitions were as section 141.032 prescribed.  The official notified Judge Gamble, rejected
his application, and planned to remove his name from the candidate list.  The Election Code afforded the party official
no other alternative.  Thus, by each of
the times Judge Gamble’s injunction suit was subsequently filed and refiled, there were no Election Code violations to be stopped
or prevented and thus none subject to injunctive relief under section
273.081.  Because Judge Gamble therefore
had no standing to assert, and the trial court had no jurisdiction to
entertain, this injunction action, I would vacate the trial court’s judgment
and order the case dismissed.

 

                                                                                    

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment rendered and Majority, Concurring, and
Dissenting Opinions filed September 26, 2002.

 

 

Panel
consists of Justices Fowler, Edelman, and Seymore.

Publish — Tex. R. App. P. 47.3(b).

 











            [1]  The temporary injunction record was
supplemented with two additional stipulations. 
The first clarified a clerical error concerning the exhibits admitted at
the temporary injunction hearing.  The
second was a stipulation that Gamble had received the votes necessary in the
Republican primary election to be the Republican nominee for judge of the 270th
District Court.  





            [2]  The general inapplicability of injunctive
relief to past violations is well recognized. 
See, e.g., United States v. Or. State Med. Soc’y, 343 U.S. 326, 333
(1952).





            [3]  Section 273.081 could have been written so as
to allow injunctive relief to prevent the harm
from continuing, but was instead written to prevent the violation from continuing. 
We must presume that the Legislature’s use of the distinct terms “harm”
and “violation” in the respective portions of the statute was intentional, and
we may not disregard the difference in meaning between those terms or fashion a
remedy that is beyond the unambiguous scope of this provision.  See
Fireman’s Fund, 13 S.W.3d at 769; Roland,
973 S.W.2d at 666.





            [4]  See,
e.g., Steel Co. v. Citizens for a Better Env’t,
523 U.S. 83, 109-110 (1998) (holding that respondent lacked standing to
maintain the injunction action, and that lower courts lacked jurisdiction to
entertain it, and ordering its dismissal, where respondent alleged only past
infractions, and not a continuing or likely future violation); Williams v. Lara, 52 S.W.3d 171, 184
(Tex. 2001) (holding that former inmates lacked standing to pursue claims for
injunctive relief, and those claims were moot, with regard to past
unconstitutional conduct which the former inmates no longer faced).  A lack of subject matter jurisdiction cannot
be waived.  See, e.g., Waco Indep. Sch. Dist. v.
Gibson, 22 S.W.3d 849, 851 (Tex. 2000).